UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**TAMPA ELECTRIC COMPANY,**

    **Plaintiff,**

v.                                Case No. 8:17-cv-1705-T-33AAS

**THE TRAVELERS INDEMNITY
COMPANY OF AMERICA, and
PIPELINE DISTRIBUTION, INC.,**

    **Defendants.**
_____/

<u>ORDER</u>

This matter comes before the Court upon consideration of Plaintiff Tampa Electric Company's ("TECO") Motion to Remand, filed on July 28, 2017 (Doc. # 10), Defendant Pipeline Distribution, Inc.'s ("PDI") response in opposition, filed on August 11, 2017 (Doc. # 24), and Defendant The Travelers Indemnity Company of America, Inc.'s ("Travelers") response in opposition, also filed on August 11, 2017 (Doc. # 25). For the reasons that follow, the Motion to Remand is **GRANTED**.

I. <u>Background</u>

TECO originally filed this action in state court, seeking declaratory relief and damages based on PDI's and Travelers' refusal to defend and indemnify TECO in an underlying action. (Doc. # 2). Invoking diversity jurisdiction, Travelers removed the case to this Court. (Doc. # 1). Although TECO and PDI are both citizens of Florida, and complete diversity

is therefore lacking, Travelers maintains that PDI is fraudulently joined and that its citizenship can be disregarded for diversity purposes. A brief review of the facts follows.

TECO's claims against Travelers and PDI arise from a personal-injury action filed by Mario Santos against TECO, PDI, and two other defendants, Posen Construction Co. ("Posen") and Johnson Engineering, Inc. (Doc. # 2 at ¶¶ 2, 10). Mr. Santos was employed by Posen, which was the prime contractor on a road expansion project. (Id. at ¶ 11). While Mr. Santos was operating a mixer, he struck an underground gas line, which exploded and caused him to suffer severe burns and permanent injuries. (Id. at ¶¶ 12, 13, 17). Mr. Santos alleged that TECO and PDI were negligent for failing to properly install, reposition, maintain, and mark the gas line. (Id. at ¶¶ 15-16).

Before the accident, TECO hired PDI to reposition the gas line in order to allow Posen to perform necessary construction. (Id. at ¶ 14). TECO and PDI entered into a General Agreement for Contracted Work ("General Agreement"). (Id. at ¶ 18). Among other provisions, the General Agreement required PDI to obtain a commercial general liability policy and to name TECO as an additional insured on the policy. (Id. at ¶¶ 18, 20, 69). In addition, the General Agreement included a hold-harmless provision, which required PDI to defend and

2

indemnify TECO for certain claims, including personal-injury claims arising from TECO's sole, contributory, or concurrent negligence. (Id. at ¶¶ 18-19; Doc. # 2 at 129-129).

PDI obtained a Commercial Insurance Policy from Travelers that named TECO as an additional insured ("the Policy"). (Doc. # 2 at ¶ 1). In the Santos action, Travelers initially defended TECO under the Policy pursuant to a reservation of rights. (Id. at ¶¶ 22, 25). Travelers also defended PDI. (Id. at ¶ 23).

Ultimately, Travelers settled Mr. Santos's claims against PDI. (Id. at ¶ 24). After the settlement, Mr. Santos filed a Fifth Amended Complaint, which asserted two negligence claims against TECO. (Id. at ¶ 31; Doc. # 1-1 at 173-179). In contrast to his prior complaint, Mr. Santos did not allege that PDI was TECO's agent. (Id. at ¶ 32).

Based on that change, Travelers withdrew its defense of TECO. (Id. at ¶¶ 33, 40). In particular, Travelers maintained that TECO was no longer an "additional insured" because the Policy specified that a "person or organization does not qualify as an additional insured with respect to the independent acts or omissions of such person or organization." (Id. at ¶¶ 33, 35; Doc. # 1-1 at 181-82). Travelers characterized the Fifth Amended Complaint as alleging claims based on TECO's independent negligence. (Doc. # 1-1 at 181).

In this action, TECO asserts six claims. (Doc. # at ¶¶ 43-74). With respect to Travelers, TECO alleges that Travelers breached the Policy by failing to defend and indemnify TECO in the Santos action (Count I), TECO seeks a declaratory judgment with respect to Travelers' duty to defend and indemnify TECO in the Santos action (Count II), and TECO alleges that Travelers tortiously interfered with the General Agreement between TECO and PDI by settling PDI's claims in the Santos action. (Id. at ¶¶ 49-60).

With respect to PDI, TECO alleges that PDI breached the General Agreement by failing to defend and indemnify TECO in the Santos action (Count IV), TECO alleges that PDI breached the General Agreement by failing to procure insurance for TECO (Count V), and TECO seeks contribution in the Santos action, pursuant to Fla. Stat. § 768.31 (Count VI). (Doc. # 2 at ¶¶ 61-74).

While the case was still pending in state court, PDI filed a Motion to Dismiss TECO's Complaint on July 17, 2017. (Doc. # 3). That same day, Travelers removed the case to this Court, with PDI's consent. (Doc. # 1). On July 28, 2017, TECO filed the instant Motion to Remand. (Doc. # 10). On July 31, 2017, PDI filed a memorandum of law in support of its Motion to Dismiss. (Doc. # 14). On August 7, 2017, the Court granted TECO's motion to stay consideration of PDI's Motion to

Dismiss pending a decision on TECO's Motion to Remand. (Doc. ## 12, 23).

On August 11, 2017, PDI and Travelers filed separate responses in opposition to the Motion to Remand. (Doc. ## 24, 25). Accordingly, the Motion to Remand is ripe for review.

## II. Discussion

As a general rule, a civil action filed in state court may be removed by a defendant to federal district court if the federal court possesses original jurisdiction. 28 U.S.C. § 1441(a). Travelers removed this action pursuant to 28 U.S.C. § 1332(a), which confers diversity jurisdiction when an action is between citizens of different states and the amount in controversy exceeds $75,000. "Diversity jurisdiction requires complete diversity; every plaintiff must be diverse from every defendant." Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998).

The parties agree that TECO is a Florida corporation with its principal place of business in Florida, that Travelers is a Connecticut corporation with its principal place of business in Connecticut, and that PDI is a Florida corporation with its principal place of business in Florida. (Doc. # 2 at ¶¶ 4-6; Doc. # 1 at ¶¶ 1-3). Therefore, for diversity purposes, TECO is a Florida citizen, Travelers is a Connecticut citizen, and PDI is a Florida citizen. 28 U.S.C. § 1332(c)(1) ("a

5

corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business").

Travelers concedes in the Notice of Removal that complete diversity is lacking because TECO and PDI are both Florida citizens. (Doc. # 1 at ¶ 1). In addition, 28 U.S.C. § 1441(b)(2) prohibits removal when a properly-served defendant is a citizen of the state in which the action is filed, as PDI is here. Nonetheless, Travelers maintains that removal was proper because PDI was fraudulently joined as a party-defendant. (Doc. # 1 at ¶¶ 1, 6-7).

The judicially-created doctrine of fraudulent joinder provides an exception to the requirement of complete diversity and to the forum-defendant rule in 28 U.S.C. § 1441(b)(2). Triggs, 154 F.3d at 1287; Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989). Fraudulent joinder may be found in three situations: (1) "when there is no possibility that plaintiff can prove the claims against the resident [or non-diverse] defendant," (2) "when there is outright fraud in the pleading of jurisdictional facts," and (3) when "a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection

to the claim against the nondiverse defendant." Triggs, 154 F.3d at 1287.

In this case, Travelers asserts that the first and third theories apply, which are addressed in turn below. (Doc. # 25 at 2-3). As the removing party, Travelers bears the "heavy" burden of establishing fraudulent joinder. Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997). The Court "evaluate[s] the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff." Id.

**A.  TECO possesses a possible cause of action against PDI**

In order to demonstrate fraudulent joinder under the first theory, Travelers must establish by clear and convincing evidence that "there is no possibility [TECO] can establish a cause of action against [PDI]." Henderson v. Wash. Nat'l Ins. Co., 454 F.3d 1278, 1281 (11th Cir. 2006). Conversely, remand is warranted if there exists "a reasonable basis for predicting that the state law *might* impose liability on the facts involved." Crowe, 113 F.3d at 1542 (emphasis in original). The potential for liability "must be reasonable, not merely theoretical." Legg v. Wyeth, 428 F.3d 1317, 1325 n.5 (11th Cir. 2005).

Because PDI is the non-diverse and forum defendant, the relevant issue is whether TECO possesses a possible claim

against PDI. As explained below, PDI is potentially liable on the breach-of-contract claim in Count IV of the Complaint. Therefore, the Court does not evaluate TECO's possibility of success on Counts V and VI. Cabalceta, 883 F.2d at 1561 (explaining that the issue is whether "the plaintiff can establish *any* cause of action against the resident defendant") (emphasis added)).

Under Florida law, a claim for breach of contract requires (1) a valid contract, (2) a material breach, and (3) damages. Abbott Labs., Inc. v. Gen. Elec. Capital, 765 So. 2d 737, 740 (Fla. 5th DCA 2000). TECO alleges that PDI breached the General Agreement's hold-harmless provision by failing to defend and indemnify TECO for Mr. Santos's personal-injury claims. (Doc. # 1 at ¶¶ 62, 64, 65). TECO maintains that PDI's obligations extended to claims based on TECO's sole, contributory, and concurrent negligence. (Id. at ¶ 63).

In response to the Motion to Remand, Travelers argues that there is no possibility of success on this claim for the reasons stated in PDI's response in opposition, as well as in PDI's Motion to Dismiss the Complaint. (Doc. # 25 at 8, 13-14). Although the Motion to Dismiss is currently not at issue — and the Court expresses no opinion as to its merits — the Court will consider PDI's arguments in assessing whether TECO has a possible claim.

PDI first argues that Count IV fails as a matter of law because the hold-harmless provision expressly excludes claims "for statutory violation." (Doc. # 14 at 6-7; Doc. # 24 at 6). PDI contends that both of the claims in the Santos action are based on statutory violations.

Mr. Santos asserts two claims against TECO in his Fifth Amended Complaint: negligence (Count 1) and negligence per se (Count 2). (Doc. # 1-1 at 176-179). The negligence claim in Count 1 is based on TECO's alleged failure (a) to properly install and relocate its natural gas line, (b) to maintain the gas line at a reasonably safe depth as required by 49 C.F.R. § 192.327 and the Florida Department of Transportation's Utility Accommodation Manual § 9.3, and (c) to notify others working on the project of the depth of the gas line. (Doc. # 1-1 at 177, ¶ 19). The negligence per se claim in Count 2 is based on TECO's alleged failure to comply with its statutory duty to mark the route of the gas line, pursuant to Florida's Underground Facility Damage and Prevention Act, Fla. Stat. §§ 556.101 et seq. (Doc. # 1-1 at 178, ¶¶ 22, 24).

The Court is not persuaded that Mr. Santos's tort claims necessarily fall outside the scope of the hold-harmless provision, so as to eliminate PDI's duty to indemnify. The hold-harmless provision states, in relevant part:

> **[PDI's] indemnification obligations hereunder shall not include claims** of, or damages resulting from, gross negligence, or willful, wanton or intentional

> misconduct of [TECO] or its officers, directors, agents, or employees, or **for statutory violation** or punitive damages except and to the extent the statutory violation or punitive damages are caused by or result from the acts or omissions of [PDI].

(Doc. # 2 at 129 (emphasis added)). One plausible reading of the hold-harmless provision is that it excludes "claims . . . for statutory violation" — that is, claims alleging a private right of action pursuant to a statute.

Here, Mr. Santos does not assert a private right of action under a statute. Of course, the negligence per se claim in Count 2 is premised on an underlying statutory violation. See Hesterly v. Royal Caribbean Cruises, Ltd., 515 F. Supp. 2d 1278, 1287 n.6 (S.D. Fla. 2007) ("negligence *per se* is the violation of a statute which establishes a duty upon a party to take precautions to protect a particular class of persons from a particular injury or type of injury."). But there is at least a question as to whether the phrase "claims . . . for statutory violation" is properly interpreted to cover a common-law negligence claim in which a statutory violation merely supplies the duty of care. Also notably, the hold-harmless provision specifies that PDI is not responsible for claims involving TECO's "gross negligence," but the provision does not absolve PDI of responsibility for claims involving regular negligence. See Mason v. Fla. Sheriffs'

10

Self-Ins. Fund, 699 So. 2d 268, 270 (Fla. 5th DCA 1997) ("the inclusion of one thing implies the exclusion of the other").

To address this issue further would require a definitive interpretation of the General Agreement, which is not appropriate on a motion to remand. The jurisdictional inquiry "must not subsume substantive determination," and this Court may not "weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." Crowe, 113 F.3d at 1538.

For this same reason, the Court does not resolve PDI's argument that the exclusion applies not only to "claims . . . for statutory violation" but to "damages resulting from . . . for statutory violation." See Doc. # 2 at 129 ("[PDI's] indemnification obligations hereunder shall not include **claims of, or damages resulting from**, gross negligence, or willful, wanton or intentional misconduct of [TECO] or its officers, directors, agents, or employees, or **for statutory violation**" (emphasis added)). The Court simply notes that "damages resulting from . . . for statutory violation" arguably is an unnatural reading of the provision, and, as a general rule, courts are discouraged from applying a "strained and unnatural construction" to a contract. Health Options, Inc. v. Kabeller, 932 So. 2d 416, 420 (Fla. 2d DCA 2006) (internal quotation marks omitted); see also Goldberg v. Companion Life

11

Ins. Co., 910 F. Supp. 2d 1350, 1352-53 (M.D. Fla. 2012) (discussing interpretative canons of "nearest referent" and "rule of the last antecedent").

Accordingly, Travelers fails to demonstrate that Mr. Santos's negligence per se claim in Count 2 is excluded by the hold-harmless provision. Travelers' argument is similarly unavailing with respect to Count 1, which asserts regular negligence. Indeed, that claim does not mention any statutory violation. Rather, Mr. Santos alleges that TECO breached its duty of care under the common law, under a federal regulation, 49 C.F.R. § 192.327, and under a Florida transportation manual. (Doc. # 1-1 at 177, ¶ 19).

In its Motion to Dismiss, PDI also briefly argues that TECO's claims are barred as a matter of law pursuant to a General Release executed by Mr. Santos when he settled his claims against PDI. (Doc. # 14 at 12-13). The General Release, which is attached to the Motion to Dismiss, discharges not only Mr. Santos's claims against PDI, but his claims for vicarious liability based on PDI's conduct. (Doc. # 14-1 at 2-3). However, the General Release expressly preserves Mr. Santos's claims against TECO to the extent they are based on TECO's own negligence. (Id. at 3).

In support of its argument, PDI relies on General Asphalt Co. v. Bob's Barricades, Inc., 22 So. 3d 697 (Fla. 3d DCA 2009), which held that a subcontractor had no duty to

indemnify a general contractor where the subcontractor entered into a settlement agreement in which the injured party released claims against the subcontractor as well as claims against the contractor based on vicarious liability. Id. at 698-99. Similar to this case, the settlement agreement preserved the injured party's claims against the contractor for the contractor's own negligence. Id. at 698. The Third District Court of Appeal affirmed summary judgment in favor of the subcontractor, holding that it had satisfied its contractual duty to defend and indemnify. Id. at 698-99.

Despite these facial similarities, General Asphalt Co. is not controlling for purposes of the Motion to Remand. In this case, the General Agreement required PDI to defend and indemnify TECO for TECO's sole negligence. (Doc. # 2 at ¶ 63); cf. Gen. Asphalt Co., 22 So. 3d at 699 (noting that subcontractor only had a duty to indemnify for claims arising from subcontractor's negligence). Because the General Release does not waive claims based on TECO's own negligence, PDI may still have a contractual duty to defend and indemnify TECO for those claims.

PDI also relies on Florida's Uniform Contribution Among Tortfeasors Act, which provides that a release given in good faith to one tortfeasor "discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor." Fla. Stat. § 768.31(5)(b). However, the Act

13

specifically provides that a release "does not discharge any of the other tortfeasors from liability for the injury . . . unless its terms so provide[.]" Fla. Stat. § 768.31(5)(a). Again, the General Release preserves claims against TECO for TECO's own negligence. Because the hold-harmless provision applies to such claims, TECO retains a potential claim for contractual indemnification. Eller & Co. v. Morgan, 393 So. 2d 580, 582 (Fla. 1st DCA 1981); SEFC Bldg. Corp. v. McCloskey Window Cleaning, Inc., 645 So. 2d 1116, 1117 (Fla. 3d DCA 1994) (noting that contract to indemnify a party for its own wrongful acts will be enforced if the terms are clear and unequivocal).

Accordingly, for purposes of the Motion to Remand, the Court finds that Travelers has failed to sustain its heavy burden to demonstrate fraudulent joinder. Mr. Santos alleges claims against TECO that arguably fall within the hold-harmless provision, and PDI has refused to defend and indemnify TECO for those claims. TECO therefore possesses a possible action for breach of the hold-harmless provision.

**B.  PDI is properly joined under Fed. R. Civ. P. 20**

Travelers alternatively argues that PDI is not properly joined in this action under Rule 20 of the Federal Rules of Civil Procedure, which sets forth the standard for permissive joinder of parties. (Doc. # 25 at 14-17). Relying on two

Eleventh Circuit opinions, Tapscott v. MS Dealer Service Corp., 77 F.3d 1353 (11th Cir. 1996),[1] and Triggs v. John Crump Toyota, Inc., 154 F.3d 1284 (11th Cir. 1998), Travelers argues that the misjoinder is so egregious as to be fraudulent. Again, the Court disagrees.

Before reaching the merits of Travelers' joinder argument, TECO asserts that Florida's more lenient joinder rule governs, rather than Rule 20 of the Federal Rules of Civil Procedure. (Doc. # 10 at 25 n.2). Outside the Eleventh Circuit, courts are split on whether the state or federal rule supplies the relevant standard for the fraudulent-joinder analysis. In re Prempro Prod. Liab. Litig., 591 F.3d 613, 622 n.6 (8th Cir. 2010). But in both Triggs and Tapscott, the Eleventh Circuit evaluated joinder under the federal rule without acknowledging the parallel state rule. Triggs, 154 F.3d at 1288; Tapscott, 77 F.3d at 1360. In light of this authority, and because TECO satisfies the more stringent standard under Rule 20, the Court likewise evaluates joinder under the federal rule. In re Prempro Prod. Liab. Litig., 591 F.3d at 622 n.6; Driver v. Protective Life Ins. Co., No. 6:17-CV-00186-RDP, 2017 WL 2462650, at *3 n.6 (N.D. Ala. June 7, 2017).

---

[1] Tapscott was abrogated on other grounds by Cohen v. Office Depot, Inc., 204 F.3d 1069, 1076-77 (11th Cir. 2000).

Pursuant to Rule 20(a)(2), defendants may be joined in one action if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2)(A)-(B).

The gist of TECO's Complaint is alternative liability, which "typically arises when the substance of plaintiff's claim indicates that plaintiff is entitled to relief from someone, but the plaintiff does not know which of two or more defendants is liable under the circumstances set forth in the complaint." Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1654 (3d ed.); <u>Saunders v. Duke</u>, 766 F.3d 1262, 1268 n.2 (11th Cir. 2014). TECO's primary claim is that Travelers possessed a duty to defend and indemnify TECO as an additional insured under the Policy. (Doc. # 2 at ¶¶ 46-47). But assuming that Travelers had no such duty, TECO alleges that PDI is liable for failing to procure the necessary insurance, as required by the General Agreement. (<u>Id.</u> at ¶ 70). Both of these claims turn on one issue: whether TECO is covered under the Policy. PDI's joinder thus satisfies Rule 20.

Even if PDI's joinder were not proper under Rule 20, the Eleventh Circuit instructs that misjoinder is fraudulent only when "the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant." Triggs, 154 F.3d at 1287, 1289-90. In this case, there exists a real connection between the claims against Travelers and PDI: the claims arise from the same accident, the claims require interpretation of the same insurance policy, and TECO seeks a defense and indemnity for the same underlying action. See Hyde Park Place II Condo. Ass'n, Inc. v. London, No. 8:16-cv-1935-T-36AEP, 2016 WL 6821126, at *3 (M.D. Fla. Nov. 14, 2016) (finding no fraudulent joinder where the plaintiff pursued multiple insurers in the same action to recover for the same loss); Harvey v. Geico Gen. Ins. Co., No. 14-80078-CIV, 2014 WL 3828434, at *4 (S.D. Fla. Aug. 4, 2014) (finding no fraudulent joinder where the claims arose from the same accident and the same settlement negotiations).

In a final challenge, Travelers argues that the joinder of claims against PDI and Travelers in the same action violates Florida's "nonjoinder of insurers" statute, Fla. Stat. § 627.4136. (Doc. # 25 at 16-17). The nonjoinder statue provides, in relevant part:

> It shall be a condition precedent to the accrual or maintenance of a cause of action against a liability insurer by a person not an insured under the terms of the liability insurance contract that such person shall first obtain a settlement or

17

> verdict against a person who is an insured under the terms of such policy for a cause of action which is covered by such policy.

Fla. Stat. § 627.4136(1).

Travelers cites no authority, nor has the Court located any authority, to hold that non-compliance with a nonjoinder statute demonstrates "egregious" misjoinder under the Tapscott and Triggs line of cases. And in any event, Travelers fails to demonstrate that the statute applies to TECO's claims. "By its terms, the nonjoinder statute applies only to a cause of action which is covered by a liability insurance contract, i.e., a tort action." Hazen v. Allstate Ins. Co., 952 So. 2d 531, 538 (Fla. 2d DCA 2007). Here, TECO is not asserting any claim that is covered by the Policy. TECO instead seeks coverage as an "additional insured" under the Policy, which "essentially is a claim against its own insurer for coverage" and is not barred by the nonjoinder statute. Gen. Star Indem. Co. v. Boran Craig Barber Engel Const. Co., 895 So. 2d 1136, 1138 (Fla. 2d DCA 2005).

Based on the foregoing, the Court holds that PDI's joinder in this action is not fraudulent. Because complete diversity is lacking, and because Travelers identifies no other basis for jurisdiction, the Court must remand the case to state court. See 28 U.S.C. § 1447(c) ("If at any time

before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

**C. Costs**

Pursuant to 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." However, "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005).

In the Motion for Remand, TECO requests costs including attorneys' fees. (Doc. #10 at 27-29). But as the above analysis indicates, the parties provided reasonable arguments on both sides. Although Travelers was ultimately unsuccessful, the Court does not find that an award of costs and attorneys' fees is warranted.

**III. Conclusion**

Based on the foregoing, it is **ORDERED, ADJUDGED, and DECREED** that:

(1) Plaintiff Tampa Electric Company's Motion to Remand (Doc. # 10) is **GRANTED**;

(2) The Clerk is directed to **REMAND** the case to the Thirteenth Judicial Circuit in and for Hillsborough County, to

**TERMINATE** any pending motion, including the Motion to Dismiss (Doc. # 3), and to **CLOSE** this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 7th day of September, 2017.

/s/ Virginia M. Hernandez Covington
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE